# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**710**
**CA 13-01447**
PRESENT: SCUDDER, P.J., SMITH, CARNI, LINDLEY, AND WHALEN, JJ.

---

APRIL D'AMICO, PLAINTIFF-APPELLANT,

V                                              MEMORANDUM AND ORDER

CORRECTIONAL MEDICAL CARE, INC., COUNTY OF
MONROE, MONROE COUNTY SHERIFF, ANDRE CARPIO,
MARIA CARPIO, ALSO KNOWN AS MARIA UMAR, AND
EMRE UMAR, DEFENDANTS-RESPONDENTS.

---

CHRISTOPHER J. ENOS, ROCHESTER, FOR PLAINTIFF-APPELLANT.

BOND, SCHOENECK & KING, PLLC, ROCHESTER (LOUIS JIM OF COUNSEL), FOR
DEFENDANTS-RESPONDENTS CORRECTIONAL MEDICAL CARE, INC., ANDRE CARPIO,
MARIA CARPIO, ALSO KNOWN AS MARIA UMAR AND EMRE UMAR.

MERIDETH H. SMITH, COUNTY ATTORNEY, ROCHESTER (MALLORIE C. RULISON OF
COUNSEL), FOR DEFENDANTS-RESPONDENTS COUNTY OF MONROE AND MONROE COUNTY
SHERIFF.

---

Appeal from an order of the Supreme Court, Monroe County (Ann Marie Taddeo, J.), entered November 19, 2012. The order granted the motions of defendants to dismiss the amended complaint and denied the cross motions of plaintiff for leave to serve an amended complaint.

It is hereby ORDERED that the order so appealed from is unanimously modified on the law by denying those parts of the motion of defendants Correctional Medical Care, Inc., Andre Carpio, Maria Carpio, also known as Maria Umar, and Emre Umar seeking dismissal of the first, second and fifth causes of action in the amended complaint against them except insofar as the motion sought dismissal of the fifth cause of action against defendant Emre Umar, and reinstating those causes of action to that extent and as modified the order is affirmed without costs.

Memorandum: Plaintiff commenced this action seeking to recover damages for abuse of process, false imprisonment/false arrest, malicious prosecution, libel per se, intentional infliction of emotional distress, and negligence, after she was allegedly falsely accused of stealing a computer from defendant Correctional Medical Care, Inc. (CMC). Plaintiff appeals from an order granting the motions to dismiss of defendants CMC, Andre Carpio (Andre), Maria Carpio, also known as Maria Umar (Maria), and Emre Umar (Emre) (collectively, CMC defendants) and defendants County of Monroe (County) and Monroe County Sheriff (Sheriff) (collectively, County defendants) (see CPLR 3211 [a] [5], [7], [8]), and denying plaintiff's cross motions for leave to serve an amended complaint.

Initially, with respect to the CMC defendants, we note that plaintiff properly amended her complaint as of right by filing the verified amended complaint after the CMC defendants moved to dismiss the original complaint (*see* CPLR 3211 [f]; *see also* CPLR 3025 [a]; *STS Mgt. Dev. v New York State Dept. of Taxation & Fin.*, 254 AD2d 409, 410), and by contemporaneously serving the amended complaint on the CMC defendants' attorney as part of her cross motion (*see* CPLR 2103 [b]).  As a result, the amended complaint superseded the original complaint and became the only complaint in the case (*see Aikens Constr. of Rome v Simons*, 284 AD2d 946, 947; *see generally Preston v APCH, Inc.*, 89 AD3d 65, 69-70).  "We [thus] consider the [CMC defendants'] motion to dismiss as directed against the amended complaint that plaintiff[] . . . submitted in [her] opposition to the motion" (*Ferguson v Sherman Sq. Realty Corp.*, 30 AD3d 288, 288; *see Sage Realty Corp. v Proskauer Rose*, 251 AD2d 35, 38).

With respect to the County defendants, the record establishes that they were served with the amended complaint prior to their service of a responsive pleading.  Thus, the amended complaint was served as of right on the County defendants (*see* CPLR 3025 [a]).  We further note that plaintiff has abandoned her sixth cause of action for intentional infliction of emotional distress (*see Ciesinski v Town of Aurora*, 202 AD2d 984, 984).

Turning to the merits, "[o]n these motions to dismiss, we accept the facts alleged in the [amended] complaint as true and accord plaintiff the benefit of every favorable inference" (*Kirchner v County of Niagara*, 107 AD3d 1620, 1621).  According to plaintiff, at some time prior to April 2008, CMC entered into a contract with the County whereby CMC would provide medical services to inmates at the Monroe County Jail, which was operated by the Sheriff.  Maria served as CMC's chief executive officer; her husband, Emre, was the company's president; and Maria's brother, Andre, was the company's vice president.  Plaintiff was employed by CMC as a health services administrator from April 1, 2008 until she was fired on February 1, 2009.  In January 2010, plaintiff filed a sexual harassment lawsuit against CMC and Emre, alleging, inter alia, that she had been subjected to unwelcome sexual conduct by Emre during her employment with CMC.  In December 2010, Maria, who was allegedly acting both individually and as CEO of CMC, Emre, and Andre all made statements to an investigator in the Sheriff's Office, in the form of supporting depositions, accusing plaintiff of stealing a laptop computer belonging to CMC the day after her employment was terminated.  Plaintiff alleged that the CMC defendants made such statements with the intent of procuring her arrest for possession of a stolen computer that each defendant knew was, in fact, not stolen.  On December 15, 2010, plaintiff was charged by misdemeanor information, which was affirmed by the investigator, with criminal possession of stolen property in the fifth degree, a class A misdemeanor (*see* Penal Law § 165.40).  Shortly thereafter, plaintiff was arrested without a warrant and subjected to mandatory processing as a criminal defendant by the investigator and other members of the Sheriff's Office.  On March 1, 2011, upon motion of her attorney, the misdemeanor information was dismissed in Town Court "as being defective on its face."

With regard to the first and second causes of action for abuse of

process and false imprisonment/false arrest, respectively, plaintiff alleged that the County defendants were vicariously liable for the actions of the investigator, who was acting "in the course of his employment with the [County], as a duly appointed Deputy acting under the supervision and control of the [Sheriff]." Plaintiff further alleged in the seventh cause of action that the County, acting through the Sheriff and his deputies and investigators, was negligent in allowing improper allegations of criminal conduct to be brought against her. Although the County defendants are not aggrieved parties on appeal (*see* CPLR 5511), we may consider their contentions as alternative grounds for affirmance inasmuch as they raised the issue of vicarious liability in Supreme Court (*see Town of Massena v Niagara Mohawk Power Corp.*, 45 NY2d 482, 488). It is well settled that "[a] county may not be held responsible for the negligent acts of the Sheriff and his deputies on the theory of respondeat superior in the absence of a local law assuming such responsibility" (*Mosey v County of Erie*, 117 AD3d 1381, ___ [internal quotation marks omitted]; *see Trisvan v County of Monroe*, 26 AD3d 875, 876, *lv dismissed* 6 NY3d 891). Section 39-10 (B) of the Monroe County Code, of which we take judicial notice (*see St. David's Anglican Catholic Church, Inc. v Town of Halfmoon*, 11 AD3d 874, 876, citing CPLR 4511 [a]), provides that Sheriff's deputies are "included under the term 'employee' for convenience of reference within this chapter only," and that section further provides that "[t]he provisions of this chapter shall not be construed as establishing an employment or respondeat superior relationship between the County of Monroe and the Sheriff of the County of Monroe, the Undersheriff of the County of Monroe or any person appointed by the Sheriff of the County of Monroe, including but not limited to Sheriff's deputies. The provisions of this chapter shall not be construed as an assumption by the County of Monroe of responsibility or liability for the negligence or tortious conduct of the Sheriff of the County of Monroe, the Undersheriff of the County of Monroe or any person appointed by the Sheriff of the County of Monroe, including but not limited to Sheriff's deputies."

Thus, inasmuch as plaintiff asserted against the County causes of action based only on respondeat superior, we conclude that the "amended complaint was properly dismissed against [the County] because [the County] did not assume liability for the acts of the Sheriff or his deputies" (*Smelts v Meloni*, [appeal No. 3], 360 AD2d 872, 873, *lv denied* 100 NY2d 516).

It is also well established that "a Sheriff cannot be held personally liable for the acts or omissions of his deputies while performing criminal justice functions, and that this principle precludes vicarious liability for the torts of a deputy" (*Barr v Albany County*, 50 NY2d 247, 257; *see Mosey*, 117 AD3d at ___; *Trisvan*, 26 AD3d at 876). We thus conclude that the amended complaint was properly dismissed against the Sheriff inasmuch as all causes of action against him were based only on respondeat superior (*Trisvan*, 26 AD3d at 876).

We conclude, however, that the court erred in dismissing plaintiff's first cause of action, for abuse of process, against the CMC defendants, and we therefore modify the order accordingly. "A plaintiff asserting a cause of action for abuse of process must plead and prove that there

was '(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective' " (*Liss v Forte*, 96 AD3d 1592, 1593, quoting *Curiano v Suozzi*, 63 NY2d 113, 116). "In addition, the plaintiff must plead and prove actual or special damages . . . , although . . . legal fees incurred in defending against false criminal charges are sufficient" (*id.; see Parkin v Cornell Univ.*, 78 NY2d 523, 530). We conclude that the court erred in dismissing the cause of action for abuse of process on the ground that there was "no evidence" to support the first element, i.e., that there was no evidence that the CMC defendants caused criminal process to issue against plaintiff. It is well settled that on a motion to dismiss a court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88). "[T]he court's role in a motion to dismiss is limited to determining whether a cause of action is stated within the four corners of the complaint, and not whether there is evidentiary support for the complaint" (*Frank v DaimlerChrysler Corp.*, 292 AD2d 118, 121, *lv denied* 99 NY2d 502). Moreover, contrary to the CMC defendants' contention, making a false report to the police that results in the issuance of criminal process may support a claim for abuse of process (*see Parkin*, 78 NY2d at 530-531; *Liss*, 96 AD3d at 1592-1593; *Light v Light*, 64 AD3d 633, 634). With regard to the second element, plaintiff sufficiently alleged that the CMC defendants intended to harm her by demeaning, humiliating, or defaming her rather than to secure justice for purported criminal conduct. With regard to the third element, plaintiff sufficiently alleged that the CMC defendants were manipulating the process to achieve a collateral objective, i.e., demeaning, humiliating, and defaming plaintiff in an attempt to gain an advantage in the sexual harassment lawsuit (*see Board of Educ. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Assn., Local 1889, AFT AFL-CIO,* 38 NY2d 397, 404; *Danahy v Meese*, 84 AD2d 670, 672). Contrary to the CMC defendants' further contention, plaintiff's amended complaint was sufficient to state a cause of action for abuse of process against CMC as a corporation. Finally, plaintiff properly pleaded special damages in her amended complaint inasmuch as legal fees incurred in defending against false criminal charges are sufficient to sustain a cause of action for abuse of process (*see Liss*, 96 AD3d at 1593; *see also Parkin*, 78 NY2d at 530).

We further conclude that the court erred in dismissing plaintiff's second cause of action, for false imprisonment/false arrest, against each of the CMC defendants, and we therefore further modify the order accordingly. "With respect to a cause of action for false arrest or false imprisonment . . . , the elements are that the defendant intended to confine the plaintiff, that the plaintiff was conscious of the confinement and did not consent to the confinement, and that the confinement was not otherwise privileged" (*Burgio v Ince*, 79 AD3d 1733, 1734; *see Broughton v State of New York*, 37 NY2d 451, 457, *cert denied sub nom. Schanbarger v Kellogg*, 423 US 929). Here, plaintiff's allegations were sufficient to state a cause of action inasmuch as plaintiff alleged that the CMC defendants, including CMC acting through Maria as its CEO, gave false statements to the police with the intent of having plaintiff arrested;

that plaintiff was conscious of the confinement and did not consent thereto; and that, as a result of the actions of the CMC defendants, she was subjected to a warrantless, unprivileged arrest. The CMC defendants contend in response that they cannot be liable for plaintiff's arrest because they merely provided information to the police who thereafter acted on their own in determining that an arrest was legally justified, i.e., supported by probable cause (*see generally Lowmack v Eckerd Corp.*, 303 AD2d 998, 999). We note however, that lack of probable cause is not an element of the cause of action for false imprisonment/false arrest, and thus need not be pleaded (*see Broughton*, 37 NY2d at 457; *see also Quigley v City of Auburn*, 267 AD2d 978, 979).

We agree with the CMC defendants, however, that the court properly dismissed the fourth cause of action, for malicious prosecution, for failure to state a cause of action (*see* CPLR 3211 [a] [7]). " 'The elements of the tort of malicious prosecution are: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice' " (*Zetes v Stephens*, 108 AD3d 1014, 1015, quoting *Broughton*, 37 NY2d at 457; *see Smith-Hunter v Harvey*, 95 NY2d 191, 195). With regard to the second element, "any [final] termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused" (*Cantalino v Danner*, 96 NY2d 391, 395, citing *Smith-Hunter*, 95 NY2d at 199; *see Martinez v City of Schenectady*, 97 NY2d 78, 84). It is well settled, however, that any disposition of the criminal action that does not terminate it, but permits it to be renewed, cannot serve as a foundation for a malicious prosecution action (*see Smith-Hunter*, 95 NY2d at 197). A dismissal without prejudice qualifies as a final, favorable termination if the dismissal represents the formal abandonment of the proceedings by the prosecutor (*see id.* at 198-199).

Here, plaintiff alleged in the complaint that the misdemeanor information was dismissed in Town Court "as being defective on its face." Plaintiff's submissions in opposition to the motion to dismiss (*see Gibraltar Steel Corp. v Gibraltar Metal Proc.*, 19 AD3d 1141, 1142), however, establish that plaintiff moved to dismiss the misdemeanor information on the ground that it was insufficient on its face because it was not supported by any nonhearsay allegations of fact sufficient to support a conviction (*see* CPL 170.30 [1] [a]; *see also* CPL 170.35 [1] [a]; 100.40 [1] [c]). Town Court dismissed the information without prejudice to the People to refile because, despite its doubts that the People would be able to successfully do so, it could not "foreclose [the People] from curing whatever defect [the misdemeanor information contained]." Inasmuch as the accusatory instrument was ultimately dismissed without prejudice to refile in order to correct the legal insufficiency of the allegations therein, we conclude that the dismissal was not final and thus cannot support a cause of action for malicious prosecution (*see Smith-Hunter*, 95 NY2d at 197; *MacFawn v Kresler*, 88 NY2d 859, 860).

Finally, we conclude that the court erred in dismissing plaintiff's fifth cause of action, for libel per se, against defendants CMC, Maria, and Andre, and we therefore further modify the order accordingly. "The elements of a cause of action for defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se" (*Salvatore v Kumar*, 45 AD3d 560, 563, *lv denied* 10 NY3d 703; *see generally* Restatement [Second] of Torts § 558). Making a false statement contained in a supporting deposition provided to the police constitutes libel on its face, i.e., libel per se, if it " 'tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or [to] induce an evil opinion of him [or her] in the minds of right-thinking persons' " (*Zetes*, 108 AD3d at 1018-1019, quoting *Rinaldi v Holt, Rinehart & Winston*, 42 NY2d 369, 379, *rearg denied* 42 NY2d 1015, *cert denied* 434 US 969). An allegation that a defendant filed a false report accusing the plaintiff of a serious crime is sufficient to state a valid cause of action to recover damages for libel per se (*see Light*, 64 AD3d at 634; *Burdick v Verizon Communications*, 305 AD2d 1030, 1031; *see also Geraci v Probst*, 15 NY3d 336, 344-345). "[P]roof of special damages is not required for libel on its face or libel per se" (*Zetes*, 108 AD3d at 1019). In addition, "[i]n an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally" (CPLR 3016 [a]). Contrary to the CMC defendants' contention, the amended complaint sets forth "the particular words complained of" inasmuch as plaintiff attached complete copies of the supporting depositions to her amended pleading and "[a] copy of any writing which is attached to a pleading is a part thereof for all purposes" (CPLR 3014); plaintiff also specifically referenced in her amended complaint the statements at issue from the supporting depositions. Here, plaintiff's allegations of libel per se are legally sufficient. She alleged that the statements contained in the supporting depositions of Andre and Maria, who was allegedly acting both individually and as CEO of CMC, falsely accused her of committing a serious crime of possession of stolen property (Penal Law § 165.40; *see Epifani v Johnson*, 65 AD3d 224, 234; *see also Martin v Hayes*, 105 AD3d 1291, 1292-1293) or, arguably, grand larceny in the fourth degree (Penal Law § 155.30 [1]; *see generally Liberman v Gelstein*, 80 NY2d 429, 435); that the statements were published to the Sheriff's Office and thereafter filed in Town Court; and that the CMC defendants made such statements in bad faith, and for the purpose of humiliating plaintiff and subjecting her to criminal prosecution (*see generally Zetes*, 108 AD3d at 1018-1019; *Light*, 64 AD3d at 634). We also conclude, however, that plaintiff failed to state a cause of action for libel per se against Emre because the statements in his supporting deposition cannot be construed as accusing plaintiff of any crime.

Entered: August 8, 2014                          Frances E. Cafarell
                                                 Clerk of the Court